NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11582


COMMONWEALTH  vs.  DWAYNE MOORE.



Suffolk.    February 10, 2016. - June 16, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Rules of Professional Conduct.  Jury and Jurors.  Practice,
Criminal, Jury and jurors, Investigation of jurors,
Deliberation of jury.




Indictments found and returned in the Superior Court
Department on January 7, 2011.

A postconviction emergency motion for judicial intervention
to prohibit inquiry of the jury, filed on July 23, 2015, was
heard by Jeffrey A. Locke, J., and questions of law were
reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.



Teresa K. Anderson, Assistant District Attorney (Edmond J.
Zabin, Assistant District Attorney, with her) for the
Commonwealth.
Chauncey B. Wood for the defendant.
K. Neil Austin, Caroline S. Donovan, & David A.F. Lewis,
for Massachusetts Association of Criminal Defense Lawyers,
amicus curiae, submitted a brief.

BOTSFORD, J.  We consider here five questions reported by a Superior Court judge to the Appeals Court concerning the effect of an amendment to Mass. R. Prof. C. 3.5 (c), as appearing in 471 Mass. 1428 (2015) (rule 3.5 [c]), regarding an attorney's ability to communicate, postverdict, with jurors who deliberated on, or were discharged from, the attorney's client's case.  Rule 3.5 (c) became effective on July 1, 2015.

1.  Background.  From February 13 to March 22, 2012, the defendant was tried in the Superior Court in Suffolk County on charges of murder in the first degree (four counts), G. L. c. 265, § 1; home invasion, G. L. c. 265, § 18C; armed robbery, G. L. c. 265, § 17; armed assault with intent to murder, G. L. c. 265, § 18 (b); aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (c); carrying a firearm without a license, G. L. c. 269, § 10 (a); and trafficking in cocaine, G. L. c. 94C, § 32E (b).  The jury were deadlocked on nine of the charges and found the defendant not guilty on the tenth (trafficking in cocaine).  The trial judge declared a mistrial.  On October 2, 2012, the defendant filed a motion for a change of venue on account of extensive media coverage, which was allowed in part.  The defendant was retried before a jury from Worcester County sitting in the Suffolk County Court House from October 16 to December 18, 2012.  In the middle of deliberations, an issue concerning a deliberating juror's

compliance with the judge's instruction not to consult extra-trial research arose. After individual inquiry of each deliberating juror, the judge dismissed one juror and, based on a finding that the remaining jurors were not affected by exposure to extraneous information, denied the defendant's motion for a mistrial. The jury continued to deliberate. One week later, the jury found the defendant guilty on the four indictments charging murder in the first degree as well as on those charging home invasion and armed robbery, and not guilty on the remaining three charges.[1] The defendant filed a notice of appeal on January 2, 2013; the appeal has been docketed in this court but has not yet been briefed or argued.

On July 14, 2015, two weeks after the effective date of rule 3.5 (c), one of the defendant's appellate attorneys sent a letter to the assistant district attorney representing the Commonwealth on appeal, informing her of defense counsel's intention to contact the deliberating jurors in the defendant's second trial pursuant to amended rule 3.5 (c), and attached a copy of the proposed letter that counsel intended to send to the jurors. On July 21, 2015, the defendant's appellate counsel sent via first class mail the letters to the deliberating jurors. Later that same day, the assistant district attorney

---

[1] The defendant was found not guilty on the charges of armed assault with intent to murder, aggravated assault and battery by means of a dangerous weapon, and carrying a firearm without a license.

sent an electronic mail (e-mail) message to the defendant's appellate counsel, notifying them that the Commonwealth would file a motion to prohibit juror communication, and further explained that "[i]t is the Commonwealth's position that post-conviction inquiry of jurors remains prohibited as a matter of law."

On July 23, 2015, the Commonwealth filed an emergency motion for judicial intervention to prohibit postconviction inquiry of the jury; the defendant's appellate counsel filed an opposition. After hearing, the motion judge, who had been the trial judge in the defendant's second trial, agreed to report to the Appeals Court five questions concerning rule 3.5 (c), ordered that the defendant's appellate counsel not communicate further with the discharged jurors pending further order of the court, and further ordered that counsel retain sealed and unread any written or e-mail responses they might receive from jurors in response to the letter previously sent.

The five reported questions are the following:

"1. In revising Rule 3.5 of the Massachusetts Rules of Professional Conduct to permit attorney originated communications with discharged jurors, did the Supreme Judicial Court implicitly overrule the prohibition against attorney originated communications with jurors as set forth in Commonwealth v. Fidler, 377 Mass. 192, 203-204 (1979)?

"2. In generally adopting the American Bar Association's Model Rule 3.5 containing the language 'prohibited by law,' did the Supreme Judicial Court intend Commonwealth v. Fidler to be continuing precedent?

"3. If the answer to question two is 'no,' then what types of contact with discharged jurors by an attorney, if any, are 'prohibited by law' under Rule 3.5(c)(1)?

"4. If the answer to question one is 'yes,' and the answer to question two is 'no,' does revised Rule 3.5 permit attorneys to communicate with jurors who were discharged prior to July 1, 2015?

"5. If the answer to question four is 'yes,' in light of Commonwealth v. Fidler, are attorneys required to seek approval from the court prior to contacting jurors?"

We transferred the judge's report from the Appeals Court to this court on our own motion.

2. Discussion. a. Attorney disciplinary rules and the Fidler decision. Effective October 2, 1972, this court adopted S.J.C. Rule 3:22, the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, as appearing in 359 Mass. 796 (1971). Disciplinary Rule (DR) 7-108 (D) governed postverdict contact with jurors. This rule permitted attorneys to initiate communication with jurors postverdict without permission of the court, providing that "the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service." S.J.C. Rule 3:22, DR 7-108 (D), as appearing in 359 Mass. 826 (1971). The text of DR 7-108 (D) was essentially identical to the Model Code of Professional Responsibility that previously had been adopted by the American Bar Association (ABA).

Seven years later, this court decided Commonwealth v. Fidler, 377 Mass. 192 (1979). The defendant in Fidler was convicted of armed robbery after a jury trial in the Superior Court, and thereafter filed a motion for a new trial based on alleged juror misconduct. See id. at 193-194. In support of the motion, the defendant filed an affidavit of one of the deliberating jurors. See id. The affidavit averred that the jury considered in their deliberations matters the judge had instructed them to disregard, and also that extraneous information had been introduced into the jury deliberations in the form of statements by a juror about factual matters relating to the defendant that had not been presented in evidence at trial. See id. The trial judge denied the defendant's motion for a new trial without an evidentiary hearing. In considering the defendant's appeal from this denial, this court affirmed the common-law rule, first discussed by this court in Woodward v. Leavitt, 107 Mass. 453, 460 (1871), but having earlier roots in England, that inquiry into jury deliberations is prohibited.[2] In

_____

[2] As stated in Woodward v. Leavitt, 107 Mass. 453, 460 (1871), this common-law principle is the following: "The proper evidence of the decision of the jury is the verdict returned by them upon oath and affirmed in open court; it is essential to the freedom and independence of their deliberations that their discussions in the jury room should be kept secret and inviolable; and to admit the testimony of jurors to what took place there would create distrust, embarrassment and uncertainty." See Commonwealth v. Fidler, 377 Mass. 192, 196 (1979) ("We still adhere to our rule [expressed in Woodward] which requires courts to protect jurors and their verdicts from

particular, we reiterated that it is impermissible to impeach a jury verdict with juror testimony concerning the contents of the jury's deliberations, and also impermissible to "permit evidence concerning the subjective mental processes of jurors, such as the reasons for their decisions."[3]  Fidler, supra at 198.  After discussing these common-law precepts, we proceeded to define and adopt a separate rule that, going forward, would require all postverdict contact with and interviews of jurors by attorneys to occur under court supervision and direction, and to be permissible "only if the court finds some suggestion that there were extraneous matters in the jury's deliberations. . . . [C]ounsel, litigants, and those acting for them may not independently contact jurors after a verdict is rendered. Counsel may investigate unsolicited information only to see if it is a matter worth bringing to the judge's attention."  Id. at 203-204.

---

unwarranted intrusions and which emphasizes the importance of the finality of jury verdicts").

   [3] We made clear, however -- as had Woodward, 107 Mass. at 466 -- that this common-law principle did not bar juror testimony to the effect that information extraneous to the trial had been introduced into the jury deliberations; the prohibition was against eliciting testimony or other evidence concerning the impact of such extraneous information on the jurors, individually or collectively:  "[O]ur rule does not create an absolute prohibition against juror testimony to impeach a verdict. . . .  [J]uror testimony is admissible to establish the existence of an improper influence on the jury, but is not admissible to show the role which the improper influence played in the jury's decisions."  Fidler, 377 Mass. at 196.  See id. at 196-198.

Fidler did not involve directly any rules of professional conduct governing lawyers; the restrictions on attorneys' postverdict contact with and interviews of jurors that the court adopted there were independent of the disciplinary rules. See Commonwealth v. Solis, 407 Mass. 398, 399, 402-403 (1990) (attorney obtained information from juror in manner that conflicted with Fidler restrictions but was consistent with S.J.C. Rule 3:07, Canon 7, DR 7-108 [D], 382 Mass. 792 [1982]). In light of the tension between Fidler and DR 7-108 (D), in 1991, the court amended DR 7-108 (D) to codify the Fidler rule governing postverdict attorney contact and communications with jurors. See S.J.C. Rule 3:07, DR 7-108 (D), as amended, 411 Mass. 1317 (1991).[4] And when in 1998 we amended the attorney disciplinary rules to conform generally to the ABA's Model Rules of Professional Conduct, we retained the Fidler-inspired limitations on postverdict contact of jurors by attorneys. See

---

[4] The revised version of S.J.C. Rule 3:07, DR 7-108 (D), appearing in 411 Mass. 1317 (1991), provided: "After discharge of the jury from further consideration of a case with which the lawyer was connected, the lawyer shall not initiate any communication with a member of the jury without leave of court granted for good cause shown. If a juror initiates a communication with such a lawyer, directly or indirectly, the lawyer may respond provided that the lawyer shall not ask questions of or make comments to a member of that jury that are intended only to harass or embarrass the juror or to influence his or her actions in future jury service. In no circumstances shall such a lawyer inquire of a juror concerning the jury's deliberation processes."

Mass. R. Prof. C. 3.5 (d), as appearing in 426 Mass. 1391

(1997), effective January 1, 1998.[5]

Thereafter, in light of changes in 2002, 2012, and 2013 to

the ABA's Model Rules of Professional Conduct, this court asked

its Standing Advisory Committee on the Rules of Professional

Conduct (committee) to review the Massachusetts Rules of

Professional Conduct.  The committee did so, and proposed

numerous revisions to our attorney disciplinary rules, including

a unanimous recommendation that we adopt the ABA's Model Rule

3.5 in place of the existing version of Mass. R. Prof. C. 3.5

and the existing rule 3.5 (d), in particular.  After receiving

public comments and hearing, we adopted the committee's

recommendation.  The amended rule 3.5, appearing at 471 Mass.

1428 (2015), and effective July 1, 2015, provides in relevant

part:

"A lawyer shall not:

". . .

"(c) communicate with a juror or prospective juror after
discharge of the jury if:

"(1) the communication is prohibited by law or court order;

"(2) the juror has made known to the lawyer, either
directly or through communications with the judge or
otherwise, a desire not to communicate with the lawyer; or

---

[5] The text of Mass. R. Prof. C. 3.5 (d), appearing in 426
Mass. 1391 (1997), was identical to the 1991 version of DR 7-
108 (D).  See note 4, supra.

"(3) the communication involves misrepresentation, coercion, duress or harassment . . . ."[6]

b. <u>Effect of adoption of rule 3.5 (c) on prohibition against attorney-originated communications with jurors</u>. The first three reported questions concern what, if any, substantive changes resulted from this court's adoption of rule 3.5 (c). Because we find the three questions to be interconnected, we discuss them together. The first question asks whether in adopting rule 3.5 (c),[7] this court implicitly overruled the prohibition against attorney-originated communications with jurors set forth in <u>Fidler</u>. The Commonwealth argues that <u>Fidler</u>'s prohibition was not overruled by rule 3.5 (c), because a revised rule of professional conduct "do[es] not and cannot create, modify, or supersede" existing case law, here <u>Fidler</u> and

---

[6] Comment 3 to Mass. R. Prof. C. 3.5, appearing in 471 Mass. 1429 (2015) (rule 3.5), relates to rule 3.5 (c). The comment states:

"A lawyer may on occasion want to communicate with a juror or prospective juror after the jury has been discharged. The lawyer may do so unless the communication is prohibited by law or a court order but must respect the desire of the juror not to talk with the lawyer. For example, where a juror makes known to the judge a desire not to communicate with the lawyer, and the judge so informs the lawyer, the lawyer may not initiate contact with that juror, directly or indirectly. The lawyer may not engage in improper conduct during the communication."

[7] The first reported question does not state expressly that its focus is specifically rule 3.5 (c), but the intended focus on this subsection of the rule is clear.

its progeny,[8] until this court expressly overrules those decisions. The Commonwealth consequently reasons that Fidler's rule prohibiting attorneys from communicating with jurors postverdict without judicial supervision remains part of the definition of "prohibited by law" in rule 3.5 (c) (1). We disagree.

Contrary to the Commonwealth's argument, we answer the first reported question in the affirmative: by adopting rule 3.5 (c), we effectively overruled our rule, first stated in Fidler, that prohibited attorney-initiated, postverdict contact of and communications with jurors free from court oversight. In our view, the text of rule 3.5 (c) and the associated commentary by themselves make this point clearly even without any mention of Fidler by name, but by way of further explanation, we add that the Fidler rule was not a statement of common-law principle but rather a rule that we adopted pursuant to our authority and responsibility to supervise the practice of law by attorneys in the Commonwealth, independent of common law or statute. See, e.g., Opinion of the Justices, 375 Mass. 795, 813 (1978) (court retains "the ultimate authority to control [attorneys'] conduct in the practice of law"). To the extent that the Fidler rule operated to define a manner of contact and communication with

---

[8] See, e.g., Commonwealth v. Bresnahan, 462 Mass. 761, 769-770 (2012); Commonwealth v. Solis, 407 Mass. 398, 403 (1990); Commonwealth v. Dixon, 395 Mass. 149, 153 (1985); Cassamasse v. J.G. Lamotte & Son, 391 Mass. 315, 317-319 (1984).

jurors postverdict that was "prohibited by law" before the adoption of rule 3.5 (c), the latter effectively superseded the Fidler rule and the prohibition against unsupervised, postverdict attorney communication that the Fidler rule had imposed.

This is not to say, however, that rule 3.5 (c) implicitly overruled this court's opinion in Fidler in its entirety, a point that leads us to the second reported question.  We interpret this question to be asking whether, in adopting rule 3.5 (c), this court intended Fidler "to be continuing precedent" in any respect.  Our answer is yes.  As we have noted, Fidler, in addition to establishing the rule of conduct relating to unsupervised postverdict contact with jurors by attorneys, discusses and reaffirms the court's continuing adherence to the common-law principle barring inquiry into the contents of jury deliberations and thought processes of jurors and the impeachment of jury verdicts based on information that might be gained from such inquiry.  See Fidler, 377 Mass. at 196-198. Our adoption of rule 3.5 (c) leaves the viability of this common-law principle undisturbed.  The secrecy of jury deliberations has served as a bedrock of our judicial system, and inquiry into the "jury's deliberative processes . . . would intrude improperly into the jury's function." Solis, 407 Mass. at 403.  See, e.g., Commonwealth v. Pytou Heang, 458 Mass. 827,

858 (2011). The common-law principle that "it is essential to the freedom and independence of [jury] deliberations that their discussions in the jury room should be kept secret and inviolable," Fidler, supra at 196, quoting Woodward, 107 Mass. at 460, was not, and arguably could not be, overruled by rule 3.5 (c).

That rule 3.5 (c) allows attorneys to initiate postverdict contact with jurors without prior court permission or oversight, however, does not mean, as the Commonwealth apparently fears, that the permitted inquiry is "unfettered and unrestricted." Rule 3.5 (c) explicitly limits the inquiry: it bars communications prohibited by law, communications with jurors who have made known an unwillingness to communicate, and communications involving "misrepresentation, coercion, duress or harassment." Mass. R. Prof. C. 3.5 (c) (1)-(3). The third reported question seeks further clarification of the first of these proscriptions, asking "what types of contact with discharged jurors by an attorney, if any, are 'prohibited by law' under [r]ule 3.5(c)(1)?" We answer that prohibited contact and communication include those that violate common-law principles, such as inquiries into the substance of jury deliberations, and communications that violate statutory law, other court rules, or specific court orders. See, e.g., Adams v. Ford Motor Co., 653 F.3d 299, 307 (3d Cir. 2011) (suggesting

that "prohibited by law" under ABA-derived rule 3.5 includes court orders and local rules of court); Williams v. Lawton, 288 Kan. 768, 794-795 (2009) ("attorneys may discuss a trial with willing jurors after their discharge . . . unless contrary [court] orders have been given").[9]

The Commonwealth contends that States that have adopted ABA Model Rule 3.5 (c) nonetheless restrict communication with jurors in a variety of ways; the thrust of the argument is that the adoption of rule 3.5 (c) does not have (or at least should not have) the practical effect of permitting attorneys independently to communicate with jurors.  It is true that a court may further tailor the limitations of attorney-initiated contact with jurors beyond those referenced in rule 3.5 (c).  However, at this point in time, this rule has been in effect in the Commonwealth for somewhat less than two years, and without further experience with the rule in operation, we are not inclined to consider adopting limitations on the scope and

---

[9] Although "prohibited by law" is not defined in the Massachusetts Rules of Professional Conduct, a previous version of the American Bar Association's Model Rules provided that "[c]onduct 'prohibited by law' clearly includes violations of criminal law and presumably includes other acts that violate statutes, court rules, or other legal norms."  Annotated Model Rules of Professional Conduct, at 232 (1984).

character of unsupervised postverdict attorney contact with jurors beyond those that rule 3.5 (c) sets out.[10,11]

c. Application of rule 3.5 (c) to jury trials completed before July 1, 2015. The fourth reported question asks whether rule 3.5 (c) permits attorneys to communicate with jurors discharged prior to July 1, 2015, the effective date of the rule.

"In general, changes in the common law brought about by judicial decisions are given retroactive effect." Halley v. Birbiglia, 390 Mass. 540, 544 (1983). Because rule 3.5 (c) effects a change in an ethical rule governing lawyer conduct rather than a substantive change in the common law, retroactivity principles applicable to the common law do not strictly apply here. As a general matter, "[d]isciplinary rules operate prospectively, not retroactively." Matter of the Estate

---

[10] We do not question that, when appropriate, a judge in a particular case may restrict or even prohibit attorneys' unsupervised communication with jurors postverdict; such a court order is expressly contemplated by rule 3.5 (c) (1) (lawyer shall not communicate with juror after trial if "the communication is prohibited by law or court order" [emphasis added]).

[11] A number of the cases cited by the Commonwealth addressing practices in other States appear to reflect a fair degree of judicial willingness to permit postverdict contact with jurors. See, e.g., Stewart v. Rice, 47 P.3d 316, 325 (Colo. 2002) ("jurors are free to discuss any aspect of their service they care to"); State v. Thomas, 813 S.W.2d 395, 397 (Tenn. 1991) (local rule that all interviews with jurors by lawyers are prohibited except with permission of court contravenes State Supreme Court rule; court permission not necessary to communicate with jurors postverdict).

of Southwick, 66 Mass. App. Ct. 740, 747 (2006). Nevertheless, in contrast to a case such as Southwick, the issue here is not whether the propriety of an attorney's conduct should be judged by more restrictive ethical rules than those in operation when the attorney acted. Rather, it is whether a less restrictive rule that effectively broadens a litigant's opportunity to explore the possibility that a jury verdict was marred by the intrusion of extraneous influences should apply to trials completed before the rule's effective date. In this context, general retroactivity principles offer guidance. To borrow from the retroactivity lexicon applicable to criminal cases, rule 3.5 (c) is a "new rule" in the sense that the rule was not "dictated by precedent existing at the time the defendant's conviction became final." Commonwealth v. Bray, 407 Mass. 296, 303 (1990), quoting Teague v. Lane, 489 U.S. 288, 301 (1989). See Commonwealth v. Sylvain, 466 Mass. 422, 434 (2013), S.C., 473 Mass. 832 (2016). In the context of the criminal law, such new rules generally apply to cases that are pending, are on direct appeal, or for which the appeal period has not run. See, e.g., Commonwealth v. Figueroa, 413 Mass. 193, 202 (1992), S.C., 422 Mass. 72 (1996). See also Commonwealth v. Augustine, 467 Mass. 230, 257-258 (2014), S.C., 470 Mass. 837 and 472 Mass. 448 (2015). Adopting this new rule approach to determine the scope of rule 3.5 (c)'s retroactivity offers a helpful way to balance

the competing interests at play here -- the interest of the defendant (and indeed every litigant) in being tried by an impartial jury, on the one hand, and society's recognized interests in the finality of jury verdicts and protecting jurors from harassment.  See Commonwealth v. Bresnahan, 462 Mass. 761, 769 (2012), and cases cited.  Accordingly, we answer the fourth question by stating that rule 3.5 (c) applies to attorneys who represented a litigant in a jury trial in which the jurors were discharged before July 1, 2015, if the case was on appeal as of that date or the appeal period had not run.  These attorneys, therefore, are permitted to contact jurors in accordance with the terms of the amended rule.

d.  Whether court approval is required prior to contacting jurors.  The fifth reported question builds on the fourth and asks whether, assuming at least some attorneys are permitted to communicate with jurors who were discharged prior to July 1, 2015, those attorneys are required to seek approval from the court prior to initiating contact.  We answer the question no.  As is the case with attorneys who, pursuant to rule 3.5 (c), seek to communicate, postverdict, with jurors discharged after July 1, 2015, attorneys who seek postverdict contact with jurors who were discharged before July 1, 2015, may do so without permission from the court.  However, and again as is true of attorneys seeking contact with jurors discharged after July 1,

2015, any proposed contact is subject to the notice requirements set forth in the following section of this opinion.

    e. <u>Guidelines for implementation of rule 3.5 (c)</u>. To assist attorneys and judges in working with rule 3.5 (c), we offer some procedural guidelines. Cf. <u>Commonwealth</u> v. <u>Jordan</u>, 469 Mass. 134, 147 (2014).

    i. Going forward, on request of any party, the trial judge shall instruct the jury regarding an attorney's right to contact and communicate with jurors after trial and a juror's right to decline to speak with an attorney postverdict. A suggested instruction is included as an Appendix to this opinion.

    ii. Although an attorney may initiate postverdict contact with jurors without prior court approval under rule 3.5 (c), the attorney must -- as the defendant's appellate attorneys did in the present case -- send prior notice of the attorney's intent to initiate such contact to counsel for the opposing party or parties (or directly to the opposing party or parties, if not represented by counsel) five business days before contacting any juror. The notice is to include a description of the proposed manner of contact and the substance of any proposed inquiry to the jurors, and, where applicable, a copy of any letter or other form of written communication the attorney intends to send. The preferred method of initiating contact with a juror is by

written letter, and the letter is to include a statement that the juror may decline any contact with the attorney or terminate contact once initiated. If the attorney seeks to initiate contact through an oral conversation (whether in person, by telephone, or otherwise), the attorney is nonetheless required to provide opposing counsel or opposing parties with prior notice of the substance of the intended communication.

The purpose of requiring prior notice is to permit opposing counsel (or an unrepresented opposing party) to seek relief from the court if the proposed communication appears to be beyond the scope of permissible inquiry or otherwise improper, or if there is a compelling reason, specific to that case, that communicating with the jurors would be inappropriate.[12] See <u>Hall v. State</u>, 151 Idaho 42, 48 (2011) ("Trial courts have the inherent authority to review . . . letters and enclosures [to be sent by counsel to discharged jurors] and order counsel to make modifications accordingly"). In stating that an opposing counsel or party may seek relief from a court, we do not intend to suggest that we anticipate a general need to do so. Our mention of the availability of judicial intervention and relief is not intended to serve as an invitation to counsel to seek it as a matter of course.

---

[12] Of course, opposing counsel (or an unrepresented opposing party) may not contact jurors upon receipt of the notice without first providing notice to the other side.

iii.  If, after communicating with a juror, an attorney wishes to secure an affidavit from the juror concerning alleged extraneous influences on the jury deliberation process, the attorney may do so without seeking or obtaining prior court approval, but any such affidavit must focus on extraneous influences, and not the substance of the jury's deliberations or the individual or collective thought processes of the juror or the jury as a whole.  See Mass. G. Evid. § 606(b) (2016).[13]  See also Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001).  Nothing in rule 3.5 (c) changes the standards governing requests for and the conduct of postverdict evidentiary

---

[13] Massachusetts Guide to Evidence § 606(b) (2016) provides:

"(b) During an Inquiry into the Validity of a Verdict or Indictment.

"(1) Prohibited Testimony or Other Evidence.  During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations, the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

"(2) Exceptions.  A juror may testify about whether

"(A) extraneous prejudicial information was improperly brought to the jury's attention or

"(B) an outside influence was improperly brought to bear on any juror."

hearings. See Fidler, 377 Mass. at 201. See also Commonwealth v. Kincaid, 444 Mass. 381, 386 (2005).[14]

3. Conclusion. We summarize here the answers to the reported questions.

(1) The adoption of rule 3.5 (c) in effect overruled the rule established by Fidler, 377 Mass. at 203-204, requiring attorneys to seek leave of court before contacting jurors postverdict, and to do so only under court supervision and direction.

(2) The common-law principles that limit postverdict inquiry of jurors to matters relating to extraneous influences and prohibit inquiry into the individual or collective thought processes of jurors, the reasons for their decision, or the substance of their deliberations, discussed in Fidler, 377 Mass. at 196-198, remain as continuing precedent. As Fidler notes, however, inquiry is permissible to establish the existence of an

---

[14] Finally, although the reported questions do not address specifically the postverdict letter sent by the defendant's appellate counsel to the jurors, the Commonwealth argues here that that the letter represents an inappropriate or improper fishing expedition. The criticism appears overblown. The dismissal of one deliberating juror due to failing to follow the judge's instructions concerning consideration of extra-trial information, the significant publicity surrounding the trial, and the particular circumstance of the shooting at Sandy Hook Elementary School in Connecticut occurring in the middle of deliberations all provide support for the questions posed by appellate counsel in their letter that, it appears, was focused on exploring the possibility of extraneous influences having been introduced into the jurors' deliberations, and not the jurors' deliberative processes.

improper influence, "but . . . not . . . to show the role which the improper influence played in the jury's decisions." Id. at 196.

(3) The common-law limitations on postverdict juror inquiry discussed in Fidler, supra at 196-198, address a type of communication "prohibited by law" within the meaning of rule 3.5 (c) (1); other communications "prohibited by law" include communications in violation of statutory law as well as specific court orders and court rules.

(4) Rule 3.5 (c) generally applies to attorneys in their representation of litigants in trials on and after July 1, 2015, but an attorney representing a party in a case that was tried to a jury and concluded before that date may contact jurors on that case pursuant to rule 3.5 (c) if the case was pending on appeal as of July 1, 2015, or the appeal period had not run as of that date.

(5) If an attorney is entitled to initiate contact with jurors who were discharged prior to July 1, 2015, because the case at issue is pending on appeal or the appeal period has not yet run, the attorney is treated the same as an attorney contacting jurors discharged after July 1, 2015; the attorney is not required to seek prior court approval, but is required to adhere to the notice requirements set out in this opinion.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.

<u>Appendix</u>.

<u>Suggested Jury Instruction</u>

"Now that your service is concluded, the question may arise whether you may discuss this case with the lawyers who presented it to you.  Whether you discuss your jury service on this case with anyone is entirely up to you.  The attorneys may desire to talk with the members of the jury.  For your guidance, you are advised that it is entirely proper for you to talk with the attorneys, and you are at liberty to do so.  However, you are not required to do so and may decline to speak with an attorney.  Whether you do so or not is entirely a matter of your own choice.  If you choose to talk with the attorneys, please do not discuss the substance or content of the jury's deliberations, including the reasons for the jury's verdict.  However, in the unlikely event that any juror during deliberations provided information about the case or any party to the case that was not in evidence, you may tell the attorneys what information was provided, but you may not discuss the effect this information had on jury deliberations.  If you prefer not to be contacted by an attorney after you are discharged, you may inform me or a court officer in person or in writing, and we will communicate this to the attorneys.  Further, if you decline to discuss the case, either today or in the future, and an attorney persists in discussing the case over your objection or becomes critical of your service as a juror, please report the incident to the court."