NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1626                                      Appeals Court

COMMONWEALTH  vs.  TYEMIKE SMITH.

No. 17-P-1626.

Worcester.     March 8, 2019. - June 5, 2019.

Present:  Hanlon, Agnes, & Sullivan, JJ.

Marijuana.  Motor Vehicle, Operating under the influence.
    Evidence, Roadside assessment.  Practice, Criminal,
    Retroactivity of judicial holding.  Retroactivity of
    Judicial Holding.

Complaint received and sworn to in the Worcester Division
of the District Court Department on September 28, 2015.

The case was heard by Paul F. Loconto, J.

Darla J. Mondou for the defendant.
Michelle R. King, Assistant District Attorney, for the
Commonwealth.

SULLIVAN, J.  The defendant, Tyemike Smith, appeals from

his conviction of operating a motor vehicle under the influence

(OUI) of marijuana in violation of G. L. c. 90, § 24 (1) (a)

(1), following a jury-waived trial in the District Court.

Relying on Commonwealth v. Gerhardt, 477 Mass. 775, 776-777

(2017), the defendant claims he is entitled to a new trial because of errors in the admission of evidence regarding impairment due to marijuana consumption.  The trial judge's treatment of the evidence fully anticipated the holding in Gerhardt.  We therefore affirm the conviction.

Background.  On September 27, 2015, at approximately 12:25 A.M., a gray Volvo driven by the defendant stopped at a sobriety checkpoint operated by State troopers on Chandler Street in front of Foley Stadium in Worcester.  The defendant lowered his car window, releasing a strong odor of burning or freshly burnt marijuana.  His eyes were red, and Trooper Donald Pillsbury, the initial screening officer, asked him if he had been smoking marijuana.  The defendant replied that he had recently smoked marijuana.  The defendant was diverted to a secondary screening area in the stadium parking lot.  Based on his statements to two troopers and performance on two roadside assessments, he was arrested for OUI of marijuana.[1]

---

[1] Following Gerhardt, 477 Mass. at 785, officers must testify to the administration of "roadside assessments" in cases involving OUI (marijuana), rather than "field sobriety tests," applicable in cases involving OUI (alcohol), so as to avoid suggesting to the trier of fact that the assessments "function as scientific validation of a defendant's sobriety or intoxication" from marijuana consumption.  At trial the term "field sobriety test" was the only term in use.  We use the term "roadside assessment" in this opinion.

3

Motion in limine.  At the outset of the jury-waived trial, the defendant moved in limine pursuant to Gerhardt, 477 Mass. at 777, then pending before the Supreme Judicial Court, to preclude witnesses from testifying to the ultimate conclusion whether the defendant was under the influence of marijuana while operating the motor vehicle.[2]  The judge ruled that the witnesses could testify to "impairment generally" but not to the ultimate conclusion whether the defendant's ability to operate a motor vehicle safely was affected by his consumption of marijuana. The defendant argued that there was no established basis for determining impairment due to marijuana consumption from which a witness could render an opinion.  The judge withheld ruling on whether he would permit the troopers to offer an opinion until he heard the evidence.

Trial.  At trial, the trooper who conducted the roadside assessments offered the following testimony which, as is discussed in more detail, infra, was partially credited by the judge.

After the defendant was sent to the secondary screening area, Trooper Christopher Fantasia approached the gray Volvo. He smelled marijuana.  He noticed the defendant's red, glassy eyes

---

[2] The defendant filed a detailed motion outlining the various issues before the Supreme Judicial Court in Gerhardt, including the full list of questions reported to the Supreme Judicial Court by the District Court judge.

and asked the defendant if he had smoked marijuana. The defendant replied that he had recently smoked marijuana. Trooper Fantasia asked if he had any marijuana in the car with him, and the defendant pointed to a bag of marijuana in the door handle. The trooper issued an exit order and seized the marijuana. The defendant appeared lethargic and laughed as he got out of the car. He agreed to perform the roadside assessments and continued laughing as he attempted the one-legged-stand (OLS). While attempting to balance on one leg for thirty seconds, the defendant swayed, held out his arms to steady himself, and was unable to remain on one leg for the full thirty-second duration of the assessment. The defendant laughed and stated that he was "too high for this type of situation."

The prosecutor asked the trooper, "[D]id [the defendant] complete this test to your satisfaction?" The defendant objected. The judge replied that the trooper permissibly described what he asked the defendant to do and his observation of what the defendant did do. The judge overruled the objection, stating that the trooper's response should not be construed as commentary on whether the defendant passed or failed the "field sobriety test," but rather whether the defendant in fact did what the trooper asked him to do, which the defendant did not.

Trooper Fantasia then testified to the defendant's performance on the nine-step walk-and-turn (WAT).  The defendant started before he was told to begin, did not begin counting until about the fifth step, and swayed while he walked.

The prosecutor next asked Trooper Fantasia, "[I]n your opinion, did [the defendant] complete this nine-step walk-and-turn to your satisfaction?"  The defendant again objected.  The trial judge noted the objection, and the trooper answered, "No, sir."  The prosecutor then asked the trooper, "So in the totality of the circumstances, all the evidence you saw that night, including these tests and his statements and what you saw and smelled, did you form an opinion as to whether this defendant was impaired?"  The defendant objected, and the judge allowed the defendant to conduct a voir dire on the admissibility of the trooper's opinion regarding the defendant's impairment.

After the voir dire, the judge ruled that Trooper Fantasia could not offer an opinion that the defendant was impaired by the consumption of marijuana.  Nor could the trooper testify to his opinion of the defendant's impairment generally.  The judge limited the trooper's testimony to his observations.

At the conclusion of the trial, the judge found the defendant guilty based on the strong odor of burnt marijuana in the car, the bag of marijuana seized from the car, the

defendant's statements that he had recently smoked marijuana, and his statement that he was "too high" to follow the trooper's instructions about the OLS. The judge did not rely on the trooper's testimony regarding the OLS and WAT.

Discussion. In a prosecution for OUI (marijuana) under G. L. c. 90, § 24 (1) (a) (1), the Commonwealth is required to prove beyond a reasonable doubt that the defendant operated the car under the influence of marijuana, an influence that "resulted in the 'impairment, to any degree, of an individual's ability to safely perform the activity in question.'" Commonwealth v. Bouley, 93 Mass. App. Ct. 709, 712 (2018), quoting Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016). See Commonwealth v. Davis, 481 Mass. 210, 215-216 (2019). The defendant contends that it was error to admit Trooper Fantasia's testimony that the "field sobriety tests" were not completed "to his satisfaction" because that testimony constituted improper opinion evidence. See Gerhardt, 477 Mass. at 777.

In Gerhardt, 477 Mass. at 776, the Supreme Judicial Court held that where a driver is charged with OUI (marijuana), the defendant's performance on roadside assessments is admissible at trial "to the extent that [the assessments] are relevant to establish a driver's balance, coordination, mental acuity, and other skills required to safely operate a motor vehicle." "In

particular, observations of the performance of the OLS and the WAT may be admissible as evidence of a defendant's balance, coordination, ability to retain and follow directions, and ability to perform tasks requiring divided attention, and the presence or absence of other skills necessary for the safe operation of a motor vehicle." Id. at 783. Law enforcement officers may not testify to whether the defendant's performance would be deemed a "pass" or "fail." Id. at 776. Nor may officers testify to "whether the performance indicated impairment" or "offer an opinion as to whether a driver was under the influence of marijuana." Id. at 776-777. With respect to the ultimate issue of impairment, triers of fact "may use their common sense in evaluating whether the Commonwealth introduced sufficient evidence to satisfy its burden of proof." Id. at 787. However, roadside assessments alone are not enough to support a conviction. Id. at 785, 789 (Appendix).[3]

---

[3] The "Model Jury Instruction Regarding Roadside Assessments for Use in Prosecutions for Operating While Under the Influence of Marijuana" provides:

"You heard testimony in this case that the defendant, at the request of a police officer, performed or attempted to perform various roadside assessments, such as [Here outline the nature of the evidence, e.g., walking a straight line, balancing on one foot]. These roadside assessments are not scientific tests of impairment by marijuana use. A person may have difficulty performing these tasks for many reasons unrelated to the consumption of marijuana.

We are presented with the threshold question whether the rule announced in Gerhardt, which was decided while this case was pending on appeal, applies retroactively.[4]  "Decisional law usually is retroactive" unless it creates a "new rule." Commonwealth v. Breese, 389 Mass. 540, 541 (1983).  "When a decision announces a new rule, however, the issue arises whether it will be applied only prospectively."  Id.  Arguably, the rule announced in Gerhardt constitutes the application of familiar

_____

"It is for you to decide if the defendant's performance on these roadside assessments indicates that his [her] ability to operate a motor vehicle safely was impaired.  You may consider this evidence solely as it relates to the defendant's balance, coordination, mental clarity, ability to retain and follow directions, ability to perform tasks requiring divided attention, and other skills you may find are relevant to the safe operation of a motor vehicle.

"It is for you to determine how much, if any, weight to give the roadside assessments.  In making your determination, you may consider what the officer asked the defendant to do, the circumstances under which they were given and performed, and all of the other evidence in this case.

"Finally, evidence of how a defendant performed in roadside assessments, standing alone, is never enough to convict a defendant of operating while under the influence of marijuana."

Gerhardt, 477 Mass. at 789 (Appendix).

[4] This case arises on direct appeal, and we therefore do not address the law applicable to new rules of criminal law on collateral review.  See generally Teague v. Lane, 489 U.S. 288, 307 (1989); Commonwealth v. Sylvain, 466 Mass. 422, 433 (2013), S.C., 473 Mass. 832 (2016).

and settled law governing expert opinion, see Commonwealth v. Sands, 424 Mass. 184, 185 (1997) ("the touchstone of admissibility is reliability"), and is therefore an "old" rule to be applied retroactively. Id. at 188-189 (granting new trial where scientific basis of horizontal gaze nystagmus test not established at trial). On the other hand, Gerhardt, 477 Mass. at 776, 789 (Appendix), announced new terminology, and provided a new model jury instruction.

Even if we assume that Gerhardt announced a new common-law rule, the court had the discretion to apply a new common-law rule retroactively, either to the pending case or to other cases pending on direct review, or to apply the new rule prospectively only. "When announcing a new common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively." Commonwealth v. Hernandez, 481 Mass. 582, 602 (2019), quoting Commonwealth v. Dagley, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005).

In Gerhardt, however, the court was silent on the issue of retroactive or prospective application. Our case law is lacking in guidance as to what this court (or a trial judge hearing a

motion for new trial while an appeal is stayed) is to do in cases on direct appeal when the court that announced the rule declined to say whether the rule is an old rule or a new rule, and if it is new, whether it is to be retrospective or prospective.

There is broad language in many cases stating that changes in decisional law are applicable to cases pending on direct review where the issue was preserved at trial. See, e.g., Commonwealth v. Johnston, 467 Mass. 674, 704 (2014), citing Commonwealth v. Bray, 407 Mass. 296, 299 (1990) ("The defendant's trial was completed before our decisions . . . were released, but he is entitled to the benefit of changes in decisional law that are announced after trial and pending his direct review"). A closer review of these cases, however, suggests that they may arise in the context of claimed constitutional error, even though the rule is described more generally. See Commonwealth v. Waweru, 480 Mass. 173, 188 (2018); Commonwealth v. Muller, 477 Mass. 415, 431 (2017); Commonwealth v. Broom, 474 Mass. 486, 492-493 (2016); Johnston, supra at 704; Commonwealth v. Augustine, 467 Mass. 230, 232 (2014), S.C., 470 Mass. 837 (2015); Commonwealth v. Figueroa, 413 Mass. 193, 202 (1992), S.C., 422 Mass. 72 (1996). See also E.B. Cypher, Criminal Practice and Procedure § 1:21 (4th ed.

2014) (distinguishing between new constitutional and new nonconstitutional rules for purposes of retroactivity).

There are relatively few reported cases involving the retroactivity of common-law changes to the rules of evidence to cases pending on direct review.[5]  Compare Commonwealth v. Adjutant, 443 Mass. 649, 667 (2005) (new common-law rules of evidence regarding self-defense applied to defendant but otherwise prospectively), and Commonwealth v. Pring-Wilson, 448 Mass. 718, 736-737 (2007) (same, applied to subsequent defendant), with Commonwealth v. King, 445 Mass. 217, 248 (2005), cert. denied, 546 U.S. 1216 (2006) (adopting first complaint rule prospectively, as matter of superintendence).  See Commonwealth v. Dwyer, 448 Mass. 122, 147 (2006) (treating new evidentiary rule as constitutionally informed rather than constitutionally mandated, and applying it prospectively).  It appears that the general practice prior to Adjutant, supra, had been to apply new common-law evidentiary rules prospectively.  See Commonwealth v. Clemente, 452 Mass. 295, 305 (2008), cert. denied, 555 U.S. 1181 (2009) (describing application of new rule

---

[5] When a case announces a new rule regarding the order and presentation of evidence, the new rule is often adopted under the Supreme Judicial Court's powers of superintendence, and usually is applied prospectively.  See Dagley, 442 Mass. at 720-721 ("In prior cases announcing new rules or requirements in the exercise of our superintendence power, we have declined to give the new rule or requirement retroactive effect").

announced in Adjutant to defendant in that case as "most unusual step").[6]

Recent case law suggests that flexibility and discretion are involved, even in cases involving common-law rules where no issue of constitutional dimension has been raised, when the issue in question has been preserved.  In Hernandez, 481 Mass. at 602, the court applied a new common-law rule governing the finality of convictions of criminal defendants who die while an appeal is pending to the defendant in that case, where the Commonwealth had fully preserved the issue.  Id. ("[W]e see no reason why the Commonwealth should not have the benefit of that new rule in this case.  Otherwise, the new rule shall only apply prospectively").  See Commonwealth v. Moore, 474 Mass. 541, 550-551 (2016).[7]  However, neither Hernandez nor Moore involved the admissibility or orderly presentation of evidence at trial.

---

[6] But see Commonwealth v. Pidge, 400 Mass. 350, 354 (1987) (applying rule of evidence retroactively in case involving murder in the first degree).

[7] The Gerhardt decision also introduced a procedural anomaly.  Gerhardt was heard on reported questions, 477 Mass. at 777, and the case here was tried with Gerhardt well in mind.  In this unique context, were we to borrow from those cases dealing with the retroactive application of new rules of constitutional dimension, see, e.g., Moore, 474 Mass. at 550-551, we would further note that Gerhardt was decided while this case was on direct appeal, and the issues were preserved at trial.  See Hernandez, 481 Mass. at 602; Broom, 474 Mass. at 492.

Even if we assume, without deciding, that the Supreme Judicial Court's silence means that the rule in Gerhardt is retroactive, there was no error here.  The judge's rulings were prescient and strictly followed the rubric later outlined in Gerhardt.  "There is no doubt that an officer may testify to his or her observations of, for example, any erratic driving or moving violations that led to the initial stop; the driver's appearance and demeanor; the odor of fresh or burnt marijuana; and the driver's behavior on getting out of the vehicle." Gerhardt, 477 Mass. at 783.  The trial judge limited the trooper's testimony to a description of what he asked the defendant to do and his observation of what the defendant did.  This was permissible descriptive testimony, not impermissible evaluative testimony.  It is unlikely that the phrase "to your satisfaction" will be used after Gerhardt, since it arguably imputes a level of expertise or authority either to the officer or the roadside assessment that the court in Gerhardt counselled against.  Nonetheless, the judge's contemporaneous explanation regarding the use to which he put the testimony negates any suggestion that the judge was improperly influenced by the phrasing of the question.[8]

_____

[8] The judge reasoned, "So if [the trooper] says to walk ten paces and someone walks five, can he be asked the question, 'Did he complete that task to your satisfaction?'  Why can't he say,

At the end of the day, the judge placed no reliance on the trooper's description of the defendant's performance of the roadside assessments.  The judge credited the trooper's testimony regarding the presence and odor of marijuana in the car, the defendant's admission that he had recently smoked marijuana, and the defendant's admission that he was "too high for this type of situation."  The evidence the judge relied on was properly admitted.[9]  Accordingly, there was no error.

Judgment affirmed.

---

'No, he didn't, 'cause I asked him to do ten and he walked five'?"

[9] The latter two statements were indisputably admissible as statements of a party opponent.  See Mass. G. Evid. § 801(d)(2) note, at 286 (2018), and cases cited.