NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-275

COMMONWEALTH

vs.

JACK N. KEVERIAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Jack N. Keverian, appeals from his conviction after a jury trial of operating under the influence of intoxicating liquor (OUI), second offense.[1] The defendant argues that a State police trooper's testimony opining that the defendant "was under the influence of alcohol and marijuana" violated Commonwealth v. Gerhardt, 477 Mass. 775, 785 (2017), decided six days after this trial, which held that a police officer not qualified as an expert may not opine that a defendant was intoxicated by marijuana. The defendant contends that, although the jury acquitted him of operating under the

_____

[1] After the jury trial on the underlying charge, the second offense portion of the charge was heard by the judge, who also found the defendant not responsible for a civil marked lanes infraction.

influence of marijuana (OUI-marijuana), the trooper's opinion as to marijuana intoxication infected the conviction for OUI. We affirm.

Background. At about 2:30 A.M. on February 27, 2016, Trooper Matthew Clark responded to Soldiers Field Road in Brighton, where the defendant's rented Chevrolet Cruze and another car (second car) had collided. When the trooper arrived, both drivers were standing between the vehicles. The trooper asked if they were injured, and the driver of the second car replied that he was not. The defendant just stood there with a dazed look, then said, "No." Because of his dazed look, the trooper thought the defendant might be injured, and asked the question again. The defendant repeated that he was not injured.

The trooper told both drivers to return to their vehicles, and the driver of the second car complied. The defendant began walking toward the Cruze, but walked into the travel lane of the roadway, and so the trooper redirected him to the Cruze. The Cruze was still running, and there was no passenger in it. After the trooper asked for the defendant's license and registration, the defendant handed the trooper his license and an expired rental agreement that pertained to a different vehicle.

2

A State police trooper for ten years, Trooper Clark had been trained to perform field sobriety tests and to recognize the symptoms of alcohol impairment. During their conversation, Trooper Clark smelled strong odors of both alcohol and marijuana emanating from the interior of the Cruze.[2] He also noticed that the defendant had a slack, droopy facial expression and bloodshot eyes with reddened rims. Questioned by the trooper, the defendant admitted he had consumed two beers, but said that he did not remember the brand of beer. He said he was headed home, which he said was "close"; when the trooper asked where he lived, he named a town well over twenty miles away. The defendant's speech was not so slurred as to be unintelligible, but he spoke with a "thick tongue."

At the trooper's request, the defendant got out of the Cruze and stood in the breakdown lane while the trooper instructed him on how to perform field sobriety tests.[3] At this

---

[2] Trooper Clark was trained in how to recognize the odor of marijuana; he had smelled it "[w]ell over a hundred times" during motor vehicle stops, and also while at the State police academy. See Commonwealth v. MacDonald, 459 Mass. 148, 158 (2011) (trained police officer may identify odor of marijuana).

[3] The prosecutor, the trooper, and defense counsel all referred to the tests as "field sobriety tests." In Gerhardt, 477 Mass. at 785, the court directed that in the context of marijuana intoxication the term "roadside assessments" should be used instead. Gerhardt did not discuss what term should be used where, as here, there is evidence of consumption of both alcohol and marijuana. The defendant does not raise the issue on appeal, and so we do not reach it.

point, the defendant was swaying back and forth.  Asked if he had taken any drugs or medication during the day, the defendant replied that he had taken his medically prescribed marijuana "this morning."  The trooper again smelled a strong odor of alcohol and a strong smell of marijuana.  The trooper asked why, if the defendant had smoked marijuana that morning, the odor was still strongly emanating from his clothing; the defendant replied that he did not know.  Although the temperature was about thirty degrees, the defendant, who was wearing a "winter jacket" over a shirt and sweater, was "profusely sweating," and the arteries on the sides of his neck were visibly palpitating.  When the trooper asked what time it was, the defendant said he thought it was about 12:30 to 1 A.M.; in fact, it was about 2:30 A.M.

The defendant had difficulty with two of the three field sobriety tests.  As to the one-legged stand, on his first attempt he held his foot up for only ten seconds, rather than the required thirty seconds, before he began hopping; on his second attempt, he kept his foot up for thirty seconds, but had to use his arms to maintain balance.  During the nine-step walk-and-turn, he used his arms for balance, walked ten steps instead of nine, and did not count the steps aloud as instructed.  The defendant did pass the alphabet test.

4

The trooper arrested the defendant, placed him in the back seat of the police cruiser, and radioed for a tow truck. The trooper went to the Cruze, turned off the ignition, and secured the defendant's wallet and cell phone. On the front passenger seat was a cigarette lighter, and wedged next to the center console was a large glass water bong containing green leafy vegetable matter that smelled like marijuana.[4] In the center console were seven small bottles labeled with the defendant's name, each containing green leafy vegetable matter that smelled like marijuana. At booking, the trooper found in the defendant's wallet a medical marijuana card, which was valid.

At the close of evidence, defense counsel moved for a required finding of not guilty, arguing that the Commonwealth had not proven which substance -- alcohol or marijuana -- caused the defendant's impairment. The judge denied the motion, noting that he would instruct the jury to consider the two charges separately, and then did so. The jury convicted the defendant of OUI and acquitted him of OUI-marijuana. After trial, the defendant moved pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995), for a required finding of not guilty, which the judge denied. This appeal followed.

_____

[4] The judge struck the trooper's testimony opining that the substance was marijuana.

     Discussion.  1.  Opinion testimony.  The defendant argues

that the trooper improperly testified that the defendant "was

under the influence of alcohol and marijuana."  The defendant

contends that because the Commonwealth presented no expert

testimony explaining "which of the two disjunctively enumerated

substances . . . caused the alleged impairment . . . or whether

both operated in tandem," the OUI conviction "cannot stand."  He

asserts that because the necessity for expert testimony is a

question of law, our review should be "de novo."  However, the

defendant did not raise that question of law at trial, and thus

he did not preserve it for appellate review.

     Before trial, defense counsel informed the judge, "There

was no . . . motion in limine just because it's hard for me to

anticipate exactly what the trooper is going to say, but I will

give your Honor the head's up that I probably will lodge a fair

number of objections to the trooper's testimony about the OUI

drugs portion."  On direct examination, after describing the

defendant's performance on field sobriety tests, the trooper

testified:

> THE PROSECUTOR:  "So at that point did you form an opinion
> as to the defendant's sobriety?"
>
> TROOPER CLARK:  "Yes, I did."
>
> THE PROSECUTOR:  "And what is that opinion?"
>
> TROOPER CLARK:  "I formed the opinion that [the defendant]
> was under the influence of alcohol and marijuana.  I placed
> him under arrest."

DEFENSE COUNSEL:  "Objection."

THE COURT:  "No, it will be overruled.  The jury may consider that."  (Emphasis added.)

Defense counsel did not specify the grounds for his objection and did not argue -- then or at any point before or during trial -- that the trooper should not be permitted to opine that the defendant was under the influence of marijuana.  Contrast Commonwealth v. Smith, 95 Mass. App. Ct. 437, 438 (2019) (defendant moved in limine to preclude police from opining as to whether he was under influence of marijuana).  Instead, his subsequent argument on the required findings motion -- which he reiterates on appeal -- was that the trooper's opinion was inadmissible because it was based on the "intermingling" of intoxicants.  In these circumstances, it is doubtful that the defendant preserved for appellate review the admissibility of the trooper's opinion that the defendant was under the influence of marijuana.  Cf. Commonwealth v. Grady, 474 Mass. 715, 720-721 (2016) (defendant's motion in limine to preclude substitute drug analyst from testifying did not preserve objection to specific question as to weight of substance).  Even were we to consider the issue preserved and review for prejudicial error, we would find none.  Because the jury acquitted the defendant of OUI-marijuana, he was not prejudiced by the trooper's inclusion of the words "and marijuana" in his opinion.

Since this trial, Gerhardt has made clear that it is impermissible for a police officer not qualified as an expert[5] to testify that a defendant was under the influence of marijuana, or that certain symptoms evidenced marijuana use.  477 Mass. at 785-787.  Contrast Commonwealth v. Morse, 468 Mass. 360, 377 (2014) (drug recognition expert "testified to the typical physical and cognitive consequences of ingesting marijuana and alcohol").  We trust that, after Gerhardt, the Commonwealth would not offer a police officer's lay opinion that an individual was "under the influence of . . . marijuana," as Trooper Clark testified here, nor would it offer a nonexpert's testimony attempting to explain the physiological effects of marijuana use.[6]

_____

[5] Trooper Clark testified that he was trained in how to recognize the symptoms of marijuana usage and impairment, but did not assert that he was qualified as a drug recognition expert.

[6] For example, over the defendant's objection, Trooper Clark testified that "in some cases the THC . . . draws blood out to the capillaries that cause that red, rosy . . . facial look and the red bloodshot eyes," and that the defendant's carotid artery was "palpitating back and forth at a high rate of speed . . . indicative of there being . . . control[led] substances on board . . . causing that reaction along with the profuse sweating." That testimony was impermissible.  See Gerhardt, 477 Mass. at 786 ("Where there is no scientific consensus on what, if any, physical characteristics indicate marijuana intoxication, no lay opinion can be admissible as common knowledge or understanding on that subject").  Cf. Commonwealth v. Frangipane, 433 Mass. 527, 535 (2001) (social worker not qualified to testify about how trauma victim stores memory, which involved physical functioning of brain).  See Mass. G. Evid. § 702 (2022).  The defendant does not find fault on appeal with that specific

8

Gerhardt made clear, however, that a police officer may testify to observations of a defendant's performance on the one-legged stand and the walk-and-turn "as evidence of [his] balance, coordination, ability to retain and follow directions, and ability to perform tasks requiring divided attention, and the presence or absence of other skills necessary for the safe operation of a motor vehicle."  477 Mass. at 783.  Contrast id. at 783 n.18.  "[T]hat marijuana can cause impairment of skills necessary to driving, such as coordination, concentration, and the ability to divide one's attention among multiple tasks, is within the common experience and knowledge of jurors."  Id. at 784.  The officer may not, however, opine that the defendant's performance on the one-legged stand or walk-and-turn showed that he was under the influence of marijuana.  Id. at 784 & n.19. Here, Trooper Clark permissibly testified that the one-legged stand and the walk-and-turn were "divided-attention tests" that were designed to assess a person's physical ability to perform certain actions, and also the person's mental ability to listen to and follow instructions.  Trooper Clark also permissibly described "his observation of what the defendant did."  Smith, 95 Mass. App. Ct. at 439.

_____

testimony, and so we do not reach the issue raised in Smith, 95 Mass. App. Ct. at 441-442, as to whether Gerhardt applies retroactively.

9

As to the argument that the OUI conviction cannot stand because the trooper's opinion did not specify whether alcohol, marijuana, or both caused the defendant's impairment, it is unavailing.  As a matter of law, the Commonwealth was not required to prove that alcohol was "the sole or exclusive cause" of a defendant's impairment, but only that it was "one contributing cause of the diminished ability."  Commonwealth v. Stathopoulos, 401 Mass. 453, 457 (1988).  See Commonwealth v. Bishop, 78 Mass. App. Ct. 70, 75 (2010) ("to find guilt, the jury need only . . . find that the liquor contributed to the defendant's impairment" [quotation omitted]).  At defense counsel's request, the judge declined to give a model jury instruction pertaining to cases where there is evidence of both alcohol and drug use.[7]  Merely because the judge did not give

_____

[7] That model jury instruction states:

> "If the Commonwealth has proved beyond a reasonable doubt that the defendant's ability to operate safely was diminished by alcohol, then he (she) has violated the law even if some other factor tended to magnify the effect of the alcohol or contributed to his (her) diminished capacity to operate a vehicle safely.  Alcohol need not be the only exclusive cause.  It is not a defense that there was a second contributing cause so long as alcohol was one of the causes of the defendant's diminished capacity [to] operate safely."

Criminal Model Jury Instructions for Use in the District Court 5.310 (2019), supplemental instruction 5, citing Bishop, 78 Mass. App. Ct. at 74-75.  See Stathopoulos, 401 Mass. at 456 n.4.

that instruction did not mean that the Commonwealth was required to prove which substance caused the defendant's impairment. We presume that the jury followed the judge's instruction on the OUI charge that the Commonwealth was required to prove that the defendant's "ability to drive safely was diminished by alcohol."

Beyond that, because the effects of marijuana "vary greatly amongst individuals," Gerhardt, 477 Mass. at 786, it may not be possible for even a medical expert to parse which symptoms exhibited by a defendant are attributable to alcohol intoxication and which to marijuana intoxication. Nor, after Gerhardt, would it be permissible for a police witness to do so.

We conclude that the trooper's testimony opining that the defendant "was under the influence of . . . marijuana" did not create a substantial risk of a miscarriage of justice. That opinion did not prejudice the defendant because the jury acquitted him of OUI-marijuana. The evidence proving OUI was "very strong, if not overwhelming." Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 328 (2023). See id. at n.9. The defendant collided with another car, had a dazed expression, smelled of alcohol, admitted he had drunk two beers, did not know how far he was from home or what time it was, and could not perform the one-legged stand and walk-and-turn.

2. "Constructive amendment" of complaint. The defendant argues that, by permitting the trooper to testify that the

11

defendant "was under the influence of alcohol and marijuana," the judge constructively amended the complaint. He contends that because one count alleged that he was under the influence of "intoxicating liquor," and the other alleged that he was under the influence of "mari[j]uana," "the two substances were mutually exclusive," but the Commonwealth impermissibly advanced a theory that the defendant's impairment resulted from the "combined ingestion of both substances -- alcohol and marijuana." We are not persuaded.

Here, the trooper's single-sentence opinion that the defendant was under the influence of "alcohol and marijuana" did not equate to advancing a new theory of culpability. As explained above, Stathopoulos, 401 Mass. at 457, makes clear that the defendant's impairment by alcohol was not "mutually exclusive" of his possible impairment by marijuana. The defendant knew in advance of trial that the Commonwealth was charging him with both OUI and OUI-marijuana: the complaint set forth each of those crimes in separate counts. Contrast Commonwealth v. Shellenberger, 64 Mass. App. Ct. 70, 75-76 & n.7 (2005) (vague reference in medical record to unquantified amount of amphetamine in defendant's system was "surprise" prosecution theory, and did not provide basis to prove it impaired defendant's ability to drive). See Commonwealth v. Williams, 73 Mass. App. Ct. 833, 836 (2009) (after bench trial, judge

12

improperly amended count charging operating motor vehicle so as to endanger to motor vehicle homicide by negligent operation). Cf. Commonwealth v. Lampron, 65 Mass. App. Ct. 340, 347 (2005) (instruction that jury could convict even if alcohol was only contributing cause of the defendant's impairment, or its effect was magnified by another cause, did "not equate to charging the jury on a separate theory of culpability").

Judgment affirmed.

By the Court (Neyman, Desmond & Grant, JJ.[8]),

Joseph F. Stanton

Clerk

Entered: March 28, 2023.

---

[8] The panelists are listed in order of seniority.

13