IN THE SUPREME COURT OF NORTH CAROLINA

No. 308A24

Filed 12 December 2025

GVEST REAL ESTATE, LLC (formerly Gee Real Estate, LLC), plaintiff

v.

JS REAL ESTATE INVESTMENTS, LLC; SHAW CAPITAL & GUARANTY, LLC; TR REAL ESTATE, LLC; LEVAN CAPITAL, LLC (formerly known as Trinvest Partners, LLC); JAMES SHAW; TYSON RHAME; and YARDS AT NODA, LLC, defendants

v.

JS REAL ESTATE INVESTMENTS, LLC.; TR REAL ESTATE, LLC; JAMES SHAW; TYSON RHAME; and YARDS AT NODA, LLC, counterclaim plaintiffs

v.

GVEST REAL ESTATE, LLC (formerly Gee Real Estate, LLC), counterclaim defendant

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion granting defendants' motion for summary judgment and granting in part and denying in part plaintiff's motion for partial summary judgment entered on 12 September 2023 by Judge Adam M. Conrad, Special Superior Court Judge for Complex Business Cases, in Superior Court, Mecklenburg County, after the case was designated a mandatory complex business case by the Chief Justice on 28 November 2016 pursuant to N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 23 April 2025.

*Rex C. Morgan and Jonathan Salmons for plaintiff-appellant.*

*Chelsea J. Corey for defendant-appellees.*

RIGGS, Justice.

This case involves a dispute over the membership and management of Yards at NoDa, LLC (Yards at NoDa) between plaintiff, Gvest Real Estate, LLC (Gvest), and defendants, JS Real Estate Investments, LLC and TR Real Estate, LLC (collectively, the real estate companies) and the real estate companies' respective owners, James Shaw and Tyson Rhame. Before us is the issue of whether the Business Court erred in granting defendants' motion for summary judgment on Gvest's declaratory judgment claim and granting summary judgment to the extent brought by defendants on Gvest's claims for breach of fiduciary duty and constructive fraud. For the reasons set forth below, we conclude that the Business Court did not err and affirm its order and opinion.

## I. Factual and Procedural Background

### A. Establishment of Yards at NoDa and Subsequent Business Disputes

In 2011, Raymond Gee, a Charlotte businessman and real estate developer, identified a large tract of real estate in the North Davidson neighborhood of Charlotte that was ripe for multi-family residential redevelopment. Mr. Gee had a prior working relationship with Atlanta-based investor Mr. Shaw, and Mr. Gee contacted Mr. Shaw about investing in the venture. Mr. Shaw agreed that the development was a good business opportunity, and he contacted another Atlanta-based business associate, Mr. Rhame, about his potential investment in the project.

Mr. Gee, Mr. Shaw, and Mr. Rhame formed Yards at NoDa in 2012 to begin

work on the development.  Per the Operating Agreement, Mr. Gee and Mr. Shaw were identified as the two managers of the company, while three investment limited liability corporations were identified as the company's members: (1) plaintiff Gvest (then identified as Gee Real Estate, LLC), which was completely controlled by Mr. Gee, owned 25% of Yards at NoDa; (2) defendant JS Real Estate Investments, completely controlled by Mr. Shaw, owned 37.5% of Yards at NoDa; and (3) defendant TR Real Estate, completely controlled by Mr. Rhame, owned 37.5% of Yards at NoDa. Mr. Gee's more limited capital investment, reflected by the smaller ownership interest, was to be offset by his "sweat equity" expended shepherding the project along.

Relevant to this appeal, the Operating Agreement contained several mandatory provisions concerning the transfer of interests and removal of members. According to subsection 6.1.1.2 of the Operating Agreement, any transferee was required to "deliver[ ] to the Company a written instrument agreeing to be bound by the terms of Section VI of this Agreement."  Subsection 6.1.1.5 required "[t]he transferor or the transferee [to] deliver[ ] the following information to the Company: (i) the transferee's taxpayer identification number; and (ii) the transferee's initial tax basis in the Transferred Interest."  Finally, subsection 6.1.1.6 mandated that "the transferor . . . obtain[ ] the prior written consent of the Manager, which consent may be withheld in the Manager's sole discretion."  The Operating Agreement explicitly defined the term "Manager" to mean both Mr. Gee and Mr. Shaw.  Pursuant to the

Operating Agreement, failure to comply with any of these mandatory transfer provisions would render the transfer "invalid, null and void, and of no force or effect."

Mr. Gee's relationship with his partners quickly deteriorated. In 2013, Mr. Shaw and Mr. Rhame began the process of attempting to freeze Mr. Gee out of the venture, first by attempting to transfer JS Real Estate Investments' and TR Real Estate's membership interests in Yards at Noda to a set of different holding companies, Shaw Capital and Levan Capital (collectively, the Capital companies). Mr. Shaw and Mr. Rhame also submitted a proposed amendment to the Operating Agreement that would have made the Capital companies members of Yards at NoDa in the place of the real estate companies; Gvest initially agreed to the amendment but subsequently withdrew that approval. Mr. Shaw and Mr. Rhame also issued a 2013 K-1, a federal tax document, to Mr. Gee that showed him possessing a reduced 16.78% ownership interest in Yards at Noda, though it was subsequently amended and reissued to reflect Mr. Gee's correct 25% interest.

Of particular importance to this appeal, there are no executed documents in the record directly establishing that the transfer provisions of the Operating Agreement were followed. No "written instrument agreeing to be bound by the terms of Section VI," as required by subsection 6.1.1.2, was ever produced in discovery or testified to; no testimony or document directly established that the Capital companies ever delivered their "taxpayer identification number[s]" or "initial tax bas[e]s," as required by subsection 6.1.1.5, and there is no document showing "prior written

consent of the Manager," i.e., Mr. Gee and Mr. Shaw, approving the transfers. Indeed, Mr. Gee acknowledged that he never executed such written consent.

Notwithstanding the absence of any evidence clearly establishing compliance with these formalities, the record does contain evidence suggesting that Mr. Shaw and Mr. Rhame did attempt and intended to effectuate membership transfers to the Capital companies. For example, Yards at NoDa's tax returns for 2014 and 2015 listed the members as Gvest and the Capital companies. Yards at NoDa's 2013 return was also amended in September 2014 to list the Capital companies as members. And Mr. Rhame—but, critically, not then-managers Mr. Gee or Mr. Shaw—signed two "Written Consent of Managers" documents dated 1 January 2013 purporting to consent to the transfers to the Capital companies.

Mr. Shaw and Mr. Rhame undertook other efforts to push Mr. Gee out of their business venture in connection with these intended transfers to the Capital companies. On 29 August 2014, Mr. Shaw and Mr. Rhame executed—on behalf of the real estate companies—a corporate resolution replacing as a manager Mr. Gee with Mr. Rhame. They also executed an "Agreement Regarding Managers" on behalf of the Capital companies, which stated that those two entities were members of Yards at NoDa pursuant to the Operating Agreement, that Mr. Shaw and Mr. Rhame were the managers of the company, and that the Capital companies, as members, would not vote to remove either person as manager without the other entity's consent.

In 2015 and 2016, Mr. Shaw and Mr. Rhame were indicted on federal charges

for wire and mail fraud and money laundering in connection with a currency trading business they jointly owned. A civil asset forfeiture action was also commenced against the two men. Both were subsequently convicted. During this period, in 2015, Yards at NoDa defaulted on a loan it had received from Wells Fargo; to cure the default, Mr. Shaw and Mr. Rhame—with the involvement of the United States Attorney—loaned Yards at NoDa roughly $7,885,000 at 15% interest (the mezzanine loans). Yards at NoDa ultimately paid off Wells Fargo via a no interest loan of roughly $3,269,000 from Mr. Shaw and Mr. Rhame to Yards at NoDa in July 2016.

## B. Business Court Proceedings and Appeal

Gvest filed suit against Mr. Shaw and Mr. Rhame, as well as all the relevant companies, in November 2016. Of the claims relevant to this appeal, Gvest sought a declaratory judgment that: (1) the real estate companies transferred their membership interests to the Capital companies in 2013; (2) the real estate companies were therefore not actually members when they voted to remove Mr. Gee as a manager in August 2014; (3) the real estate companies ceased to be members under N.C.G.S. § 57D-3-02, which generally provides that a party is no longer a member if they abandon their economic interest in the LLC; and (4) Mr. Gee was therefore still a manager of Yards at NoDa, and Gvest was the sole member. In an amended complaint, Gvest subsequently brought claims for, *inter alia*, breach of fiduciary duty and constructive fraud, alleging Mr. Shaw, Mr. Rhame, and the real estate companies owed minority member Gvest a fiduciary duty as collective 75% majority owners of

the Yards at NoDa and alleging that several commercial loan transactions and their efforts to exclude Mr. Gee and Gvest from the business constituted oppressive self-dealing that monetarily damaged Gvest by siphoning money from Yards at NoDa.

The real estate companies, Mr. Shaw, Mr. Rhame, and Yards at Noda brought counterclaims for unfair or deceptive trade practices, constructive fraud, negligent misrepresentation, fraudulent inducement, and breach of fiduciary duty against Gvest, and the case proceeded through discovery in the Business Court to a hearing on competing motions for summary judgment.[1]

The Business Court entered an Order and Opinion on Motions for Summary Judgment on 12 September 2023, entering summary judgment against Gvest on defendants' declaratory judgment claim for one reason: Gvest failed to forecast any evidence establishing that the required transfer provisions of the Operating Agreement—subsections 6.1.1.2, 6.1.1.5, and 6.1.1.6—were ever satisfied. As a result, and contrary to Gvest's requested declaratory relief, the real estate companies were never divested of Yards at NoDa and validly voted to oust Mr. Gee as manager by majority vote in August 2014. As for Gvest's claims alleging breach of fiduciary duty and constructive fraud, the Business Court acknowledged that given the contractual nature of LLCs and the lack of a singular majority member, there was no precedent or legal authority in North Carolina to impose a fiduciary duty on minority

---

[1] The counterclaim against Gvest for breach of fiduciary duty treats Mr. Gee as the owner and alter ego of Gvest.

members who form a majority coalition and outvote the remaining minority membership. Because breach of fiduciary duty and constructive fraud claims both require the existence of such a fiduciary relationship, the Business Court granted defendants' motion for summary judgment against Gvest on those claims. Counterclaims for constructive fraud, negligent misrepresentation, and punitive damages remained outstanding following the Business Court's order.

Gvest subsequently filed a motion for reconsideration of the order and opinion, raising new arguments. The Business Court denied the motion, concluding that no new evidence had been presented, new arguments were improper on a motion to reconsider, and in any event, those new arguments were plainly without merit.

Defendants subsequently voluntarily dismissed all outstanding claims in June and August 2024. Gvest filed notice of appeal from the Business Court's order and opinion and its reconsideration order after the dismissal of the last outstanding claims. Alongside their appellee brief to this Court, defendants filed a motion to dismiss the appeal on narrow, technical grounds: defendants fully acknowledge that the order and opinion and reconsideration order were rendered final judgments by virtue of the dismissal of all their outstanding counterclaims in June and August 2024, but defendants nonetheless contend there has been no "entry of judgment" because no additional document was signed and filed by the Business Court after defendants voluntarily dismissed their claims, meaning that this Court would not have appellate jurisdiction.

On appeal before this Court, Gvest challenges the Business Court's rulings on two grounds. First, Gvest contends that the tax returns executed by Mr. Shaw, the 2013 Written Consent of Managers documents executed by Mr. Rhame, and the Agreement Regarding Managers executed by the Capital companies (by Mr. Shaw and Mr. Rhame) are all substantial circumstantial evidence tending to show that Mr. Shaw and Mr. Rhame actually complied with the required transfer provisions of the Operating Agreement as early as 2013. Second, Gvest contends that minority shareholder oppression doctrines applicable to corporations should be extended to limited liability companies in this case, particularly because the Capital companies executed an agreement binding each other to vote together on any removal of Mr. Shaw and Mr. Rhame as managers.

## II. Standard of Review

This Court has original appellate jurisdiction over final judgments from cases designated as mandatory complex business cases under N.C.G.S. § 7A-27. *See* N.C.G.S. § 7A-27(a)(2) (2023). On 28 November 2016, former Chief Justice of the Supreme Court of North Carolina, Mark Martin, designated this case as a mandatory complex business case pursuant to N.C.G.S. § 7A-45.4(b). The Business Court entered an Order and Opinion on Motions for Summary Judgment on 12 September 2023. The defendants voluntarily dismissed their remaining claims in June and August 2024, leaving no further claims in the matter and making the 12 September 2023 Order a final judgment. *See Veazey v. City of Durham*, 231 N.C. 357, 361 (1950)

("A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court.") Thus, this Court has appellate jurisdiction to review the Business Court's order.

Summary judgment is reviewed de novo. *N.C. Farm Bureau Mut. Ins. Co. v. Martin*, 376 N.C. 280, 285 (2020). "When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *N.C. Farm Bureau Mut. Ins. Co. v. Herring*, 385 N.C. 419, 422 (2023) (cleaned up). Entry is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Id.* at 423 (quoting N.C.G.S. § 1A-1, Rule 56(c) (2021)).

## III.  Analysis

### A. Summary judgment for defendants on Gvest's declaratory judgment claim was appropriate.

Gvest sought a declaratory judgment that the real estate companies transferred their membership interests to the Capital companies in January 2013, and that the subsequent vote of the real estate companies to oust Mr. Gee as a manager in 2014 was thus invalid. Defendants conceded that the real estate companies attempted to transfer their interests but that their attempt did not comply with subsections 6.1.1.2, 6.1.1.5, and 6.1.1.6 of the Operating Agreement, meaning that the membership of Yards at NoDa never changed, all three original members

remain members, and that Mr. Gee's removal was valid as it had been effectuated by a majority of the members (two out of the three total).

### 1. *Gvest waived any argument concerning compliance with the Operating Agreement.*

Gvest's argument fails for several simple reasons: (1) Gvest was required to argue and show compliance with subsections 6.1.1.2, 6.1.1.5, and 6.1.1.6 in order to receive a declaratory judgment that the real estate companies validly transferred their interests to the Capital companies, but it waived any argument concerning compliance with the first two subsections before the Business Court; (2) subsection 6.1.1.6 required the prior written consent of all managers prior to any transfer between the real estate companies and the Capital companies; and (3) Mr. Gee, who was undisputably a manager for the entirety of 2013, fully admits that he never executed any written consent to such a transfer. In short, Gvest's argument that circumstantial evidence shows Mr. Shaw and Mr. Rhame did everything they needed to do to effectuate the transfers is entirely undercut by Mr. Gee's acknowledgment that he never did what *he* was required to do to effectuate the exchange.

On the other hand, defendants' brief in support of their motion for summary judgment argued that the parties failed to comply with all three relevant terms in section VI of the Operating Agreement, which rendered the proposed transfer of membership rights "invalid, null and void." The Business Court understood Gvest's brief as only asserting compliance with subsection 6.1.1.6. Consistent with Rule 7.2 of the North Carolina Business Court Rules, the Business Court concluded that Gvest

had waived any argument asserting necessary compliance with subsections 6.1.1.2 and 6.1.1.5. *See* BCR 7.2.

In its principal brief on appeal, Gvest again has not argued that this waiver determination was in error—meaning it has again waived any argument of this issue. *See* N.C. R. App. P. 28(a). The Business Court's order and opinion is appropriately affirmed on this basis.

2. ***Alternatively, the evidence supported that the transfer of membership interests was invalid and there was a valid vote to oust Mr. Gee as manager.***

Subsection 6.1.1.6 of Yards at Noda's Operating Agreement plainly states that any membership transfer required "the prior written consent of the Manager." The Operating Agreement plainly defined "Manager" to mean both of Mr. Gee and Mr. Shaw: "Raymond M. Gee and James S. Shaw are hereby designated to serve as the initial Manager." Without compliance with subsection 6.1.1.6, subsection 6.1.3 rendered any attempted transfer between the real estate companies and the Capital companies "invalid, null and void, and of no force or effect." That subsection further provides, "Any Person to whom Membership Rights are attempted to be transferred in violation of this Section *shall not be entitled to vote on matters coming before the Members.*"[2] (Emphasis added.)

---

[2] The Business Court made this same series of determinations in its orders, and Gvest has not argued that the Business Court's interpretation and application of the Operating Agreement was in error.

Gvest's own complaint asserts that "in January 2013, the [real estate companies], through Shaw and Rhame, secretly transferred their entire membership interests to [the Capital companies], *without advising or notifying the Plaintiff*." (Emphasis added.)  It further alleges, "In late Summer 2014, . . . *Gee was not aware that* [*the real estate companies*] *had transferred their membership interests to* [*the Capital companies*]." (Emphasis added.)  Mr. Gee testified in his deposition that the earliest he could have possibly known of an intent for Mr. Rhame to transfer TR Real Estate's membership interest to the Capital companies was in May of 2014.  Finally, the record contains no evidence establishing that Mr. Gee ever executed written consent for membership transfers from the real estate companies to the Capital companies prior to his removal as manager by the real estate companies in August 2014.

Gvest has no counterargument in either its principal brief or reply brief on appeal.  While it argues that documents in the record—like the tax returns, the purported "consent" to the transfers by Mr. Rhame as a manager in a document dated January 2013 (before Mr. Rhame was ever made a manager), and the Capital companies' Agreement Regarding Managers—amount to adequate circumstantial evidence to establish that Mr. Shaw and Mr. Rhame executed whatever documents they could to complete the transfers,[3]  Gvest does not cite to anything establishing

---

[3] Even this argument is not particularly persuasive on the merits. Gvest argues we should presume that the various necessary transfer documents were created, executed, and delivered as required by the Operating Agreement because they would have been in the

that Mr. Gee ever gave the *necessary* prior consent to the transfers; indeed, it disclaims that fact several times over throughout the record.

This evidentiary record is clear that Mr. Gee never gave his required consent to transfer the real estate companies' membership interests to the Capital companies prior to January 2013, let alone prior to the removal vote in August 2014. Without that consent, the real estate companies never validly transferred their membership interests to the Capital companies, and the real estate companies could—and did— validly vote to remove Mr. Gee as a manager in August 2014. The Business Court

---

exclusive control of defendants. But Gvest acknowledged that defendants had provided all documents requested, and the Business Court found that defendants "have satisfied every document demand made by Gvest and that no further demands have been made." Absent any spoliation or discovery violation arguments, there is no reason to presume that the necessary documents existed but were destroyed or withheld. At best, then, Gvest's evidence discloses an (uncontested) intent by Mr. Shaw and Mr. Rhame to transfer the relevant membership interests—not a further and entirely speculative inference that defendants actually effectuated the transfer consistent with the Operating Agreement. The cases cited by Gvest for the contrary position are clearly distinguishable; for example, it relies heavily on *Eggleston v. Eggleston*, 228 N.C. 668 (1948), for the proposition that tax returns are competent evidence of ownership in a partnership. The obvious distinction is that partnerships are *unincorporated* and thus can be created by *implied* contract. As such, a partnership can be created "orally . . . [or] by the agreement or conduct of the parties, either express or implied." *Id.* at 674 (cleaned up). This is not the case with LLCs, which must be formally incorporated consistent with the statutory requirements and cannot be implied from mere conduct. *See, e.g.*, N.C.G.S. § 57D-2-20(a) (2023) ("One or more persons may cause an LLC to be formed by delivering executed articles of organization to the Secretary of State for filing . . . ."). Gvest's other proffered cases deal with issues unique to spousal business operations and/or do not address whether tax returns are competent to show compliance with binding transfer provisions in an LLC's operating agreement. *See, e.g.*, *Penley v. Penley*, 314 N.C. 1, 18 (1985) (noting a tax return was relevant to the issue of whether the spouse participated in a business gratuitously or in exchange for stock in a corporation); *Woodward v. Pressley*, 39 N.C. App. 61, 63 (1978) (holding tax returns disclosing business profits were relevant to show that profit and loss statements containing different amounts were fraudulent).

appropriately granted defendants' motion for summary judgment against Gvest on its declaratory judgment claim.

## B. Summary judgment for defendants on Gvest's claims for breach of fiduciary duty and constructive fraud was also appropriate.

Gvest concedes that there is no North Carolina precedent for creating a fiduciary duty between a majority coalition of minority LLC members and other minority members.[4] To the contrary, our courts have generally refused to fashion such a relationship in this context unless a singular majority member is able to exercise sole control under the terms of the LLC's operating agreement. *See Vanguard Pai Lung, LLC v. Moody*, No. 18CVS13891, 2019 WL 2526461, *6–7 (N.C. Super. Ct. June 19, 2019) (noting a fiduciary duty exists when a majority member of an LLC is afforded control over the LLC via the operating agreement, but not when a group of minority members join together to outvote the other minority members), *aff'd*, 387 N.C. 376 (2025) (affirming the Business Court's order). Our reluctance to

---

[4] Gvest cites seven cases from other jurisdictions for the proposition that there is a trend among our sister states of extending fiduciary duties to a majority coalition of minority LLC members. While we cannot foreclose that such a trend may be on the horizon, the specific cases cited by Gvest do not establish one, as only one of the cited cases, *Wilson v. Gandis*, 844 S.E.2d 631 (S.C. 2020), actually involved a breach of fiduciary duty claim brought by a minority member against a majority coalition of other minority members. Almost all of the cited cases are distinguishable on this or other bases. *See Weiner v. Weiner*, No. 1:06-CV-642, 2008 WL 746960 (W.D. Mich. Mar. 18, 2008) (addressing a minority member oppression claim where a Michigan statute explicitly authorized such claims between minority and majority LLC members); *Baker v. Wilmer Culter Pickering Hale & Dorr LLP*, 81 N.E.3d 782 (Mass. App. Ct. 2017) (holding minority members could bring a breach of fiduciary duty claim against *attorneys* hired to represent the LLC by majority members). And *Wilson* was itself premised on a provision of South Carolina state law authorizing minority member oppression claims. 844 S.E.2d at 642.

extend ordinary corporate shareholder oppression doctrine to LLCs derives from one of the key central distinctions between corporations and LLCs: a majority interest does not necessarily equate to control in an LLC. Control depends entirely on what the LLC's members agree to in the operating agreement. Because an LLC is primarily a creature of contract, the members are generally free to arrange their relationship however they wish. Among other things, they may depart from statutory default rules, require supermajority votes for some or all company matters, and impose or eliminate fiduciary duties for members and managers. This is one of the principal differences between LLC members and corporate shareholders: minority members of an LLC have a much stronger position because, through the freedom of contract, they are able to obtain minority protections not available to shareholders of a closely-held corporation. *Id.* at *6.

Gvest argues we should use this case to extend shareholder oppression claims first to LLCs and then again to minority coalitions to create a fiduciary duty here for three principal reasons. First, the Agreement Regarding Managers executed by the Capital companies "deprived Plaintiff of the ability to meaningfully participate in Yards [at NoDa]" and violated the covenants of good faith and fair dealing. Second, Gvest claims Mr. Gee was oppressed when he was voted out as manager and was "harass[ed] . . . with unusual document requests." Finally, Gvest claims defendants engaged in self-dealing when they gave Yards at NoDa the mezzanine loans at 15% interest.

The Agreement Regarding Managers is ultimately not the hook Gvest believes it is. As noted above, the Capital companies were never actually made members of Yards at NoDa because of the failure to comply with section VI of the Operating Agreement; as a result, the Agreement Regarding Managers is a voting arrangement between two entities *who have no actual right to vote in the operation of the LLC*. It is hard to see how an agreement that is of no practical effect is in actuality an oppressive action. Gvest's subsequent retreat to the implied covenants is of no real help because any breach of those implied covenants suffices to establish only a *breach of contract and/or a breach of implied covenants* claim—neither of which were made the basis of any appeal, to the extent they were even pleaded below. In other words, if defendants breached the implied covenants, Gvest had the opportunity to allege and establish such a claim; it is not a basis to conjure up an otherwise nonexistent fiduciary relationship to support additional claims for breach of fiduciary duty and constructive fraud.

Gvest's two additional arguments are thin. That Mr. Gee had to respond to an inordinate number of document requests is neither so damaging nor oppressive as to justify the creation a fiduciary duty necessary to support the alleged breach of fiduciary duty and constructive fraud claims. And, to the extent that Mr. Shaw and Mr. Rhame breached any fiduciary duties in the execution of the mezzanine loans, such claims belong to the LLC, not Mr. Gee or Gvest. *See, e.g.*, *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 474 (2009) (recognizing that managers of LLCs who breach

their fiduciary duties are liable to the LLC and not members because "managers of a limited liability company . . . owe a fiduciary duty to the company, and not to individual members").  Gvest even acknowledges that such a claim is available but went unpursued, as did the Business Court.

In short, Gvest and Mr. Gee have not argued to this Court that they have been injured separately and distinctly from the underlying LLC in the issuance of the mezzanine loans.  *Chisum v. Campagna*, 376 N.C. 680, 723 (2021) (noting that a minority member in an LLC may bring individual claims against majority members for breach of fiduciary duty and constructive fraud in addition to any underlying derivative claims belonging to the LLC where he can show "he suffered an injury that was separate and distinct from that suffered by [the LLC]").  That recovery by the LLC might also ultimately benefit Mr. Shaw and Mr. Rhame by mere incident of their collective majority ownership interest in the entity is not a basis in-and-of itself to recognize an individual cause of action.  *See Outen v. Mical*, 118 N.C. App. 263, 266–67 (1995) (holding a trial court erred in awarding damages for misappropriation of corporate funds to a plaintiff 50% owner individually in suit brought against a defendant 50% owner on a derivative claim).

Finally, the majority members' efforts to freeze Mr. Gee and Gvest out of the operation of the business do not inherently establish bases for individual breach of fiduciary duty or constructive fraud claims.  *See Chisum*, 376 N.C. at 724 (holding a minority member of an LLC failed to assert cognizable individual claims for breach

of fiduciary duty and constructive fraud against majority members in addition to valid derivative claims where the plaintiff's alleged injuries simply "describe[d] the specific steps that the [majority members] took to deprive [the plaintiff] of his ownership interests . . . and do not show the sort of injury that is necessary to support claims for breach of fiduciary duty and constructive fraud"). At bottom, then, Gvest has established that any "damages" flowing from the breach of fiduciary duty and constructive fraud claims took the form of alleged usurious interest rates imposed on the LLC through the self-dealing of Mr. Shaw and Mr. Rhame. This injury is indistinguishable from the LLC's, and it should not serve as the basis for individual claims by Gvest.

None of this is to say that the Agreement Regarding Managers is not problematic. As discussed earlier, we may eventually, due to changes in business practices and realities, have reason to consider (or reconsider) whether a fiduciary duty arises between majority members and minority members of LLCs, particularly when those majority members control the appointment of managers in a manager-managed LLC. *See* J. William Callison & Maureen A. Sullivan, *Limited Liability Companies* § 8:7 (2025 ed.) ("[N]on-manager members who have the power to appoint managers may have fiduciary duties. Members owning a majority interest in an LLC likely have fiduciary duties not to oppress minority members." (footnote omitted)). And Gvest might very well be oppressed, at least insofar as its ability to meaningfully participate in a vote on the removal of managers is concerned. But in this particular

case, we can and do affirm the Business Court's order and opinion without the need to extend the law in a novel direction or to create a new form of LLC liability and remedy.

## IV. Conclusion

Gvest has failed to establish error in the Business Court's rulings. It has waived any challenge to the Business Court's conclusion that entry of summary judgment for defendants on Gvest's declaratory judgment claim was proper due to Gvest's failure to argue compliance with subsections 6.1.1.2 and 6.1.1.5 of the Operating Agreement, and Gvest's own evidence defeats its argument concerning subsection 6.1.1.6. As for its breach of fiduciary duty and constructive fraud claims, the Agreement Regarding Managers executed by the Capital companies did not actually bind the members of Yards at NoDa and thus did not establish a fiduciary duty between coalition majority members—the real estate companies—and minority member Gvest. For these reasons, we affirm the Business Court's order and opinion.

AFFIRMED.